IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Cr. No. 13-00514 SOM (03) |
| | ) | Cr. No. 13-00653 SOM (01) |
| Plaintiff, | ) | Civ. No. 16-00443 SOM/KJM |
| | ) | Civ. No. 16-00444 SOM/KJM |
| vs. | ) | |
| | ) | |
| | ) | **ORDER DENYING MOTION TO** |
| JOHN PENITANI, | ) | **VACATE, SET ASIDE, OR CORRECT** |
| | ) | **A SENTENCE BY A PERSON IN** |
| Defendant. | ) | **FEDERAL CUSTODY UNDER 28** |
| _____ | ) | **U.S.C. § 2255; ORDER GRANTING** |
| | | **CERTIFICATE OF APPEALABILITY** |

**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY UNDER 28 U.S.C. § 2255; ORDER GRANTING CERTIFICATE OF APPEALABILITY**

I.       INTRODUCTION.

        Defendant John Penitani was convicted of drug-related crimes in two cases and sentenced to a total of 168 months of imprisonment, 5 years of supervised release, and a $200 special assessment.  Penitani unsuccessfully appealed and then timely moved for relief under 28 U.S.C. § 2255 in his two cases. Penitani then submitted numerous handwritten letters.  The court issues a single ruling applicable to all his motions.

        Although Penitani initially raised numerous claims in support of his motions, he ultimately restricts himself to arguing that his former counsel, Myles S. Breiner, had a conflict of interest based on Breiner's representation of both Charles Foster and Penitani, and that the Assistant United States

Attorney ("AUSA") should have informed the court about that alleged conflict of interest.  The court denies the motions.

## II.    THE ISSUES BEFORE THIS COURT HAVE BEEN SIGNIFICANTLY NARROWED.

After filing his § 2255 motions, Penitani himself mailed numerous letters to this court.  This court appointed counsel for Penitani and asked counsel to clarify what issues Penitani wanted the court to consider.  The court told Penitani that any issue not identified in the requested response would be deemed waived.  *See* ECF No. 249, 251.[1]

On July 7, 2017, Penitani identified as issues for the court to adjudicate alleged ineffective assistance of counsel by Myles S. Breiner based on (1) Breiner's alleged conflicts of interest relating to his representation of Charles Foster, Subrina Toomey, and Penitani; (2) Breiner's failure to challenge the presentence investigation report; (3) Breiner's failure to insist that certain alleged plea agreement terms be in writing; and (4) Breiner's bargaining away of Penitani's appellate rights. Penitani additionally identified alleged prosecutorial misconduct by AUSA Chris Thomas based on (1) Thomas's failure to move to disqualify Breiner because of Breiner's conflicts of interest; (2) Thomas's alleged misrepresentations as to the whether

---

[1]In this order, the court's citation to the docket refers to documents filed in Crim. No. 13-00514 SOM, although identical documents are filed in Crim. No. 13-00653 SOM.

Penitani would receive a sentence of less than 10 years; and

(3) Thomas's alleged use of information in violation of a proffer

agreement.  Finally, Penitani identified a breach of an alleged

agreement that a sentence of less than 10 years be sought,

judicial misconduct,[2] and ineffective assistance by appellate

counsel Pamela O'Leary Tower.  *See* ECF No. 255.

After multiple hearings and live testimony with respect

to Penitani's motions, the court asked for supplemental closing

argument briefs, telling the parties that any issue not raised in

the supplemental brief would be deemed waived:

> [Y]ou are limited in your closing argument
> briefs to issues that were raised in your
> list of issues, but you are not required to
> rely on all issues raised in your list of
> issues[.  I]f you do not in your closing
> argument briefs mention an issue that was on
> your list, I will deem that issue waived.
>
> Mr. Penitani, do you understand what I'm
> saying?  I'm kind of trying to figure out
> what really do I need to address.  And there
> may--there's already been a narrowing because
> I made your lawyer give me a list.  If it's
> not on the list, it's not an issue.  He gets
> to write briefs now.  If it's not in the
> brief, even if it's in your list, I'm not
> going to consider it to be something I need
> to decide.  Do you understand?
>
> THE DEFENDANT: Yeah, most of it.

---

[2]Penitani withdrew the judicial misconduct claim at the
hearing of October 3, 2017.  *See* Transcript of Proceedings (Oct.
3, 2017) at 3, ECF No. 275, PageID # 1717 ("THE COURT: So the
accusation that I'm somehow conspiring to protect counsel acting
wrongfully is withdrawn?  MR. HIRANAKA: That's correct.").

> THE COURT: What don't you understand?
>
> THE DEFENDANT: I mean I understand.
>
>     . . . .
>
> THE COURT: . . . in any event, whatever's in the brief[,] that's all that I'm going to consider. Do you understand?
>
> THE DEFENDANT: Yes.

Transcript of Proceedings (Dec. 19, 2017) at 38-39, ECF No. 297, PageID #s 1889-90.

In his closing argument of February 9, 2018, ECF No. 300, Penitani limited his discussion to whether Breiner had a conflict of interest based on his representation of both Penitani and Charles Foster, and whether AUSA Thomas should have brought that conflict of interest to the court's attention. This court deems all other issues raised by Penitani in support of his § 2255 motions to have been waived.

## III.       FACTUAL BACKGROUND.

On November 28, 2017, Drug Enforcement Administration Special Agents Clement B. Sze and Lauren A. Carney, Federal Bureau of Investigation Special Agent Grant Knorr, Breiner, and Lani Nakamura, Esq., testified. *See* ECF No. 291. On November 29, 2017, Breiner and Thomas testified. *See* ECF No. 292. On December 1, 2017, Penitani testified. *See* ECF No. 293. Most of the testimony was unrelated to the issues now remaining before this court. Unless specifically noted in the present order, each

witness testified credibly, although witnesses' memories
sometimes had faded.

Breiner began representing Charles Foster in February
2013, when Foster was in state court on drug charges. When
charges related to the same drugs were brought in federal court,
Breiner continued to represent Foster with respect to his federal
drug charges. *See* Crim. No. 13-00219, ECF No. 7; *see also*
Declaration of Attorney Myles S. Breiner ¶ 2, ECF No. 278, PageID
# 1771 ("I represented Charles Foster in the case of *United
States vs. Charles Foster*, Cr. No. 13-00219 DKW . . . from
February 2013 through August 7, 2013."); Transcript of
Proceedings (Nov. 28, 2017) at 92, ECF No. 305, PageID # 2015. A
federal court indictment of Foster was filed on March 6, 2013.
*See* Crim. No. 13-00219, ECF No. 24. It charged that, on or about
February 14, 2013, Foster, John Garcia IV, and Chrystyan Burke
possessed methamphetamine with intent to distribute (Count 1);
and possessed cocaine with intent to distribute (Count 2). It
also charged Foster and Garcia with carrying a firearm during and
in relation to the drug trafficking crimes (Count 3). *Id.* That
case, assigned to Senior District Judge Helen Gillmor, was the
first of three federal criminal cases relevant to the present
order.

Breiner says that, "[a]t no time during my
representation of Foster was the name of John Penitani ever

brought up, disclosed by Foster or discussed in any way." *See* Breiner Decl. ¶ 4, ECF No. 278, PageID # 1772; *accord* Transcript of Proceedings (Nov. 29, 2017) at 107, ECF No. 306, PageID # 2198 ("During the representation of Charles Foster by Myles Breiner, from February until the time that he was discharged as an attorney, or terminated his representation of Mr. Penitani, Mr. Penitani's name was not raised a single time.")

Breiner testified that, after Penitani's arrest, Penitani gave statements to the Government on May 14 and 15, 2013, without legal representation. Transcript of Proceedings (Nov. 28, 2017) at 94, ECF No. 305, PageID # 2017. On May 23, 2013, Penitani was indicted along with Hien Nguyen and Sugalu Galu and charged with drug-related crimes, including possession of and conspiracy to possess with intent to distribute more than 50 grams of methamphetamine, its salts, isomers, and salts of its isomers in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). *See* Crim. No. 13-00514 SOM, ECF No. 17. The May 2013 indictment, filed in the second federal criminal case relevant here, did not mention Foster. Breiner first appeared on behalf of Penitani at his detention hearing of May 21, 2013. *See* Crim. No. 13-00514 SOM, ECF No. 14.

About a month later, on June 20, 2013, in the third federal criminal case relevant here, Penitani faced another indictment with drug charges, this one naming him along with

Siaosi Mafileo, Mukusi Penitani, Salvador Maciel, Michael
Coleman, Jacob Del Mundo Faagai, Michael Nguyeun, Julius
Mitchell, Keschan Taylor, Robert Akolo, and Donald Seals.  *See*
Crim. No. 13-00653 SOM, ECF No. 1.  This indictment charged
Penitani with possession of and conspiracy to distribute and
possess with intent to distribute more than 50 grams of
methamphetamine, its salts, isomers, and salts of its isomers in
violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and
included two counts referring to 5 grams or more of the drug.
*Id.*  Breiner appeared on behalf of Penitani at his initial
appearance in this case on June 27, 2013.  *See* Crim. No. 13-00653
SOM, ECF No. 36.  A Superseding Indictment charging the same
defendants with similar drug crimes was filed on August 22, 2013.
*See* Crim. No. 13-00653 SOM, ECF No. 88.

AUSA Thomas prosecuted all three cases.  *See* Transcript
of Proceedings (Nov. 29, 2017) at 24, ECF No. 306, PageID # 2115.

Breiner conceded that there was some overlap in time
with respect to his representation of Foster and Penitani.
Transcript of Proceedings (Nov. 28, 2017) at 106, ECF No. 305,
PageID # 2029.  That is, Breiner was representing Foster when he
began representing Penitani in May 2013.  Breiner did not move to
withdraw as Foster's counsel until July 26, 2013.  *See* Crim. No.
13-00219, ECF No. 54.  On August 5, 2013, a hearing was held in
Foster's federal case on the motion to withdraw as counsel.  The

court orally granted the motion. *Id.*, ECF No. 56. A written order granting the withdrawal was filed on August 7, 2013. *Id.*, ECF No. 58.

Breiner testified that, after Penitani was arrested, Penitani made inculpatory statements to the Government before he was represented by an attorney. Most of the co-defendants in the later federal case naming him cooperated against him. Penitani's focus was on reducing his sentence, not asserting his innocence. *See* Transcript of Proceedings (Nov. 28, 2017) at 95-98, ECF No. 305, PageID #s 2018-21; Transcript of Proceedings (Nov. 29, 2017) at 15, 23, 28, ECF No. 306, PageID # 2106, 2114, 2119.

To that end, Penitani participated in a number of meetings, or "debriefings," with Government agents to provide them with information concerning his drug distribution activities. AUSA Thomas says that Penitani had seven debriefings with Government agents at which he was represented by Breiner or his associate, Lani Nakamura, plus two meetings before Breiner began representing him. Special Agent Sze put the total number of debriefings at eight, with Breiner or Nakamura being present at six of the eight. Penitani testified that there were more than five meetings and possibly more than ten meetings. Breiner testified that there were eleven or twelve debriefings. Transcript of Proceedings (Nov. 29, 2017) at 9, ECF No. 306, PageID # 2100.

Although Breiner and AUSA Thomas at first told the court that Penitani began discussing Foster in a debriefing in May 2014, they both corrected themselves, testifying that Penitani began discussing Foster on October 1, 2013. Transcript of Proceedings (Nov. 29, 2017) at 24, 96, ECF No. 306, PageID #s 2115, 2187; *see also* ECF No. 279, PageID # 1801 (Report of Investigation prepared by Special Agent Clement B. Sze on October 2, 2013, memorializing that Penitani told Government agents on October 1, 2013, that Penitani had supplied Foster with both methamphetamine and cocaine); *see also* Transcript of Proceedings (Nov. 28, 2017) at 16-17, ECF No. 305, PageID #s 1939-40 (Special Agent Sze testifying about the first time Penitani discussed Foster). Breiner and Nakamura were present at the debriefing on October 1, 2013. Transcript of Proceedings (Nov. 28, 2017) at 20, ECF No. 305, PageID # 1943.

On October 1, 2013, Penitani was shown pictures of various people and identified Foster as a person to whom he had been selling drugs. Breiner said he was "surprised" by that connection. Transcript of Proceedings (Nov. 29, 2017) at 18-19, ECF No. 306, PageID #s 2109-10; ECF No. 279, PageID # 1801. Breiner believed that he did not have a conflict of interest at that time because the drugs Penitani was talking about were not the drugs involved in the charges against Foster. Transcript of Proceedings (Nov. 29, 2017) at 25, ECF No. 306, PageID # 2116.

Breiner testified that, in a debriefing on May 16, 2014, Penitani further discussed having supplied Foster with drugs. *Id.* at 21-22, PageID #s 2112-13. Penitani testified about Foster to a grand jury. Transcript of Proceedings (Nov. 29, 2017) at 27, ECF No. 306, PageID # 2118. On May 22, 2014, a Superseding Indictment was filed in Foster's case. *See id.* at 26, PageID # 26; *see also* Crim. No. 13-00219 DKW, ECF No. 99, PageID # 239 (charging Foster, Garcia, and Nguyen with conspiring to commit drug crimes with Sheldon Koyanagi and Penitani).

As of May 2014, Breiner still believed that he had no conflict of interest, reasoning that he no longer represented Foster and that Penitani was describing drug deals unrelated to the charges Breiner had represented Foster on. Transcript of Proceedings (Nov. 29, 2017) at 28-29, ECF No. 306, PageID # 2119-20.

Penitani testified against Foster in Foster's trial. *See* Partial Transcript of Jury Trial (Dec. 11, 2014) at 93-130, Crim. No. 13-00219 HG, ECF No. 172, PageID #s 767-804; Partial Transcript of Jury Trial (Dec. 15, 2014) at 3-15, Crim. No. 13-00219 HG, ECF No. 173, PageID #s 808-20. While testifying on December 11, 2014, Penitani noted that his attorney, Breiner's colleague Nakamura, was present in court. *See* Partial Transcript of Jury Trial at 130, Crim. No. 13-00219 HG, ECF No. 172, PageID # 804. Foster's first trial ended in a mistrial. *See* Crim. No.

10

13-00219 HG, ECF No. 153.  Penitani also testified in Foster's

retrial before District Judge Derrick Watson.  *See* Transcript of

Jury Trial (Feb. 18, 2015) at 61-112, Crim. No. 13-00219 DKW, ECF

No. 229, PageID #s 2071-2122.

Penitani did not sign a waiver of any conflict of

interest by Breiner.  Transcript of Proceedings (Nov. 29, 2017)

at 36, ECF No. 306, PageID # 2127.  Breiner could not recall

whether he obtained a waiver from Foster.  *Id.* at 35, PageID

# 2126.  Nakamura did not think a waiver had been obtained from

Foster.  *See* Transcript of Proceedings (Nov. 28, 2017) at 144,

ECF No. 305, PageID # 2067.  According to Penitani, Breiner never

mentioned any conflict of interest and never asked him to sign a

conflict waiver.  Transcript of Proceedings (Dec. 1, 2017) at 36-

37, ECF No. 307, PageID # 2257-58.

Breiner says that he disclosed to Penitani and AUSA

Thomas that he had previously represented Foster.  Transcript of

Proceedings (Nov. 29, 2017) at 53, ECF No. 306, PageID # 2144.

Breiner says that, even if he had a conflict of interest, he did

not act adversely to Penitani, as he shared nothing with Foster.

Breiner notes that "Foster may have an issue," given Breiner's

representation of Penitani when Penitani testified against

Foster.  *Id.* at 50, PageID # 2141.

On May 16, 2014, Penitani appeared before a magistrate

judge and entered a guilty plea to the conspiracy charges in both

of his criminal cases pursuant to a plea agreement.  *See* ECF Nos.
79 (minutes of change of plea hearing in which Penitani pled
guilty to Count 1 of the Indictment), 80 (Report and
Recommendation Concerning Plea of Guilty), 82 (Memorandum of Plea
Agreement), 181 (transcript of change of plea hearing); Crim. No.
13-00653 SOM, ECF Nos. 179 (minutes of change of plea hearing in
which Penitani entered guilty plea to Count 1 of the Superseding
Indictment), 181 (Memorandum of Plea Agreement), 182 (Report and
Recommendation Concerning Plea of Guilty), 443 (transcript of
change of plea hearing).  On June 3, 2014, the district judge
assigned to Penitani's case accepted the Report and
Recommendation and judged Penitani guilty of the charges.  *See*
Crim. No. 13-00514 SOM, ECF No. 87; Crim. No. 13-00653 SOM, ECF
No. 575.

A single Presentence Investigation Report ("PSR") was
prepared for both cases.  *See* Crim. No. 13-00514 SOM, ECF No.
729.  The PSR calculated Penitani's sentencing guideline range as
360 months to life imprisonment.  *Id.*

Penitani filed no objections to the PSR.  Breiner
testified that Penitani instructed him to refrain from filing any
objections out of concern that objections would alienate
Government counsel and affect what sentence Government counsel
recommended to the court.  Transcript of Proceedings (Nov. 29,
2017) at 66-67, ECF No. 306, PageID # 2157-58.  Penitani, on the

other hand, testified that Breiner told him not to worry about the PSR. Transcript of Proceedings (Dec. 1, 2017) at 30, ECF No. 307, PageID # 2251. There is no direct evidence that Breiner's prior representation of Foster affected the decision not to object to the PSR. *See* Transcript of Proceedings (Nov. 28, 2017) at 157, ECF No. 305, PageID # 2080 ("Q: . . . were those decisions not to file objections to the presentence report affected by the representation of Mr. Foster? A [by Lani Nakamura]: No.").

At the time of sentencing, the court had before it a record showing several reasons, including Penitani's Foster-related assistance, supporting a below-guideline sentence. The Government recommended a below-guideline sentence of 188 to 235 months. *See* ECF No. 152, PageID # 576. Breiner, on behalf of Penitani, asked for a further reduction to 26 months. *See* ECF No. 154, PageID # 580. Breiner argued that Penitani certainly deserved a sentence of less than 10 years, *see* ECF No. 218-14 ¶ 10, although, according to Breiner's testimony in these § 2255 proceedings, there was no agreement by the Government to any such sentence. ECF No. 218-14 ¶¶ 15-16; Transcript of Proceedings (Nov. 29, 2017) at 79, ECF No. 306, PageID # 2170. Breiner's position on what the Government had represented has changed over time. In a motion filed earlier seeking reconsideration of Penitani's sentence, Breiner, through his associate, Nakamura, had argued that Penitani understood "that his testimony at grand

jury and at trial would result in a sentence of imprisonment of less than 10 years. . . . The Government acted in bad faith in misleading Defendant . . . that the Government would recommend a sentence of less than 10 years." *See* ECF No. 165-1, PageID # 787.[3] Nakamura explained that this argument was based on Penitani's belief, even though counsel had no factual basis for that belief. *See* Transcript of Proceedings (Nov. 28, 2017) at 149-50, ECF No. 305, PageID # 2072-73.

At his sentencing hearing, Penitani said he had reviewed the PSR and had no objections to it. *See* Transcript of Proceedings (July 20, 2015) at 3, ECF No. 187, PageID # 935. Adopting and relying on the PSR, the court concluded that Penitani's guideline range was 360 months to life, and that the statutory mandatory minimum sentence was 10 years, with a statutory maximum of life imprisonment. *Id.* at 6, PageID # 938. The court noted that the guidelines suggested a five-year supervised release term and a $200 special assessment. *Id.* at 7, PageID # 939. Neither the Government nor the defense challenged these calculations. *Id.*

---

[3]Breiner had negotiated an agreement that the Government not charge Penitani with a violation of 18 U.S.C. § 924(c), which would have added a five-year consecutive sentence on top of what would be his drug sentence. Transcript of Proceedings (Nov. 28, 2017) at 104, ECF No. 305, PageID # 2027.

After arguments by both sides, the court sentenced Penitani to 168 months of imprisonment.  *Id.* at 36-37, PageID #s 968-69, 973.

On August 7, 2015, Penitani appealed.  *See* ECF No. 166. Pamela O'Leary Tower, Esq., was appointed as Penitani's appellate counsel.  *See* ECF No. 174.

On July 25, 2016, the Ninth Circuit affirmed the judgment in a memorandum decision.  *See* ECF No. 193.  The Ninth Circuit noted that Penitani's attorney had filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), indicating that there were no grounds for appellate relief.  *Id.*, PageID # 992. After giving Penitani an opportunity to file a supplemental brief, which he did not file, the Ninth Circuit stated that it had independently reviewed the record and had determined that there were "no arguable grounds for relief."  *Id.*  Noting that Penitani had waived his right to appeal his sentences, the Ninth Circuit dismissed the appeals.  *Id.*, PageID #s 992-93.

On August 8, 2016, Penitani, proceeding *pro se*, timely filed the present motions in both of his criminal cases pursuant to 28 U.S.C. § 2255.  *See* Crim. No. 13-00514 SOM, ECF No. 194; Crim No. 13-00653 SOM, ECF No. 489.  Before the expiration of the one-year limitation period, Penitani sent this court a letter in which he asked, "How can attorney Myles Breiner truly represent someone in a case 100% without bias if he's representing someone

who's co-operating against them."  ECF No. 209, PageID # 1141.

Penitani explained, "I believe Myles S. Breiner represents at

least 2 people involved in cases that involved me, as well as

others who were debriefing against me."  *Id.*  The court deems

this letter to have supplemented Penitani's § 2255 motions and

determines that he timely raised the conflict issue.

**IV.     ANALYSIS.**

A federal prisoner may move to vacate, set aside, or

correct his or her sentence if it "was imposed in violation of

the Constitution or laws of the United States, . . . the court

was without jurisdiction to impose such sentence, or . . . the

sentence was in excess of the maximum authorized by law, or is

otherwise subject to collateral attack."  28 U.S.C. § 2255.

While there are limits on the kinds of claims that can and cannot

be raised in a § 2255 petition, these limits are not applicable

to the present motions, which claim that Penitani's counsel,

Breiner, was ineffective in representing Penitani because of a

conflict of interest arising out of Breiner's representation of

both Penitani and Foster and that the Government should have

notified this court of that conflict of interest.  *See* ECF No.

300.  Penitani's "Sixth Amendment right to counsel encompasses a

right to representation free from conflicts of interest."  *Hovey*

*v. Ayers*, 458 F.3d 892, 907 (9th Cir. 2006) (quotation marks and citation omitted).

> **A. To Prevail on an Ineffective Assistance of Counsel Claims Based on an Attorney's Conflict of Interest, a Petitioner Must Show More than the Existence of a Conflict.**

To demonstrate ineffective assistance of counsel, a defendant must usually show that (1) his or her counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is "a strong presumption" that counsel's conduct was reasonable and that counsel's representation did not fall below "an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688. Even if a petitioner can overcome the presumption of effectiveness, the petitioner must still demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction," judicial scrutiny of counsel's performance is highly deferential. *Id.* at 689.

The requirements for an ineffective assistance of counsel claim based on counsel's alleged actual conflict of interest have been the subject of several cases that are

controlling here.  *See United States v. Walter-Eze*, 869 F.3d 891, 900 (9th Cir. 2017).  Because it is difficult to measure the precise effect on defense counsel's representation when that representation is corrupted by conflicting interest, prejudice is presumed when "counsel actively represented conflicting interests and . . . an actual conflict of interest adversely affected [the] lawyer's performance."  *Strickland*, 466 U.S. at 692.

> [A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.  But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.

*Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980) (quotation marks and citation omitted).  However, the Supreme Court, in *Mickens v. Taylor*, 552 U.S. 162 (2002), made it clear that, while saying that a defendant "need not demonstrate prejudice," it was not relieving the defendant of the need to show something more than the existence of a conflict.  The Court explained that an "actual conflict" for Sixth Amendment purposes is "a conflict of interest that adversely affects counsel's performance."  *Id.* at 172 n.5.

The Ninth Circuit has stated, "Although a defendant who raises an effective assistance of counsel claim is ordinarily required to show prejudice, prejudice is presumed if the alleged violation is based on an actual conflict of interest." *United States v. Miskinis*, 966 F.2d 1263, 1268 (9th Cir. 1992) (citation omitted). Penitani relies on *Miskinis* for the proposition that prejudice in this case should be presumed because Breiner had an "actual conflict" by virtue of his representation of Foster and Penitani. *See* ECF No. 200, PageID # 1904, 1907-11; ECF No. 301-1, PageID # 2318. But the Ninth Circuit has clarified that a defendant does not demonstrate ineffective assistance of counsel simply because he or she shows that counsel was burdened with a conflict of interest. Prejudice is presumed upon a showing of an "actual conflict of interest," which has been defined by the Supreme Court as "'a conflict of interest that adversely affects counsel's performance.'" *Hovey*, 458 F.3d at 908 (quoting *Mickens,* 552 U.S. at 172 n.5).

In other words, a defendant asserting an actual conflict has the benefit of a presumption of prejudice only upon showing that a negative consequence flowing from the conflict was at least likely, even if that negative consequence might not satisfy the ordinary prejudice burden. An "actual conflict of

interest" must have "affected counsel's performance--as opposed to [being] a mere theoretical division of loyalties." *Walter-Eze*, 869 F.3d at 901 (quotation marks and citation omitted). "The inquiry is accordingly fact specific and does not rely on the characterization or type of conflict presented: an actual conflict is defined by its impact on counsel's representation." *Id.* (quotation marks and citation omitted).

To establish an impact on counsel's representation, a defendant must show "'that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *Id.* (quoting *United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005)). Counsel's performance was adversely affected if "some effect on counsel's handling of *particular aspects* of the trial was likely." *Id.* at 901. (quotation marks and citation omitted). This could include a counsel's failure to put on certain defenses and witnesses, failure to explore the possibility of a plea agreement, or failure to seek a continuance. *Id.*

**B. Penitani Does Not Establish an Entitlement to Relief Based on Breiner's Concurrent or Consecutive Representation of Both Foster and Penitani.**

This court's local rules provide: "Every member of the bar of this court . . . shall be governed by and shall observe the standards of professional and ethical conduct required of members of the Hawaii State Bar."  Local Rule 83.3.  Attorneys practicing in the Hawaii state courts must comply with the Hawaii Rules of Professional Conduct.  *See* Rules of the Supreme Court of the State of Hawaii Rule 2.2(a) ("The Hawai`i Rules of Professional Conduct . . . shall govern the conduct of all attorneys subject to discipline under this rule.").  In examining whether Breiner had a conflict of interest, this court therefore looks to the Hawaii Rules of Professional Conduct.

**1. Penitani Does Not Show that Breiner Violated Rule 1.7(a) of the Hawaii Rules of Professional Conduct by Concurrently Representing Penitani and Foster.**

Breiner's representation of Foster overlapped Breiner's representation of Penitani for about 2½ months in 2013.  Concurrent representation of clients is governed by Rule 1.7 of the Hawaii Rules of Professional Conduct, which states in relevant part:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the

21

representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:

    (1) the representation of one client will be directly adverse to another client; or

    (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person, or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

    (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

    (2) the representation is not prohibited by law;

    (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

    (4) each affected client gives consent after consultation, confirmed in writing.

Haw. R. Prof. Conduct 1.7.[4]

---

[4]The Hawaii Rules of Professional Conduct are taken from the American Bar Association's Model Rules of Professional Conduct. *Baham v. Ass'n of Apartment Owners of Opua Hale Patio Homes*, 2014 WL 413495, at *2 (D. Haw. Feb. 4, 2014).  Although Penitani relies on Rule 1.7(a)(2) of the model rules, *see* ECF No. 300,

Notably, Rule 1.7(b), which includes the requirement of written conflict waivers, applies only if there is a concurrent representation conflict under Rule 1.7(a).

Breiner indisputably represented both Foster and Penitani with respect to drug crimes. However, Penitani offers no evidence that, at the time of the concurrent representation, the representation of either was directly adverse to the other or that there was a significant risk that the representation of Penitani was materially limited by Breiner's responsibility to Foster. At the time of the concurrent representation, neither Breiner nor the Government had reason to think that the drugs in Foster's case had anything to do with Penitani. If there was a directly adverse representation or a significant risk that Breiner's responsibility was materially limited, Penitani has not shown that. Penitani similarly fails to show that AUSA Thomas should have informed the court about Breiner's alleged concurrent representation conflict of interest.

It was, of course, later discovered that Penitani had been supplying drugs to Foster, but Penitani must show more than that. Penitani is required to show that this circumstance

---

PageID # 1905, the court examines his argument under Rule 1.7(a)(2) of the Hawaii Rules of Professional Conduct, which is identical to its model rules counterpart.

created a significant risk that Breiner's representation of Penitani would be materially limited by his representation of Foster. But Breiner was not representing Foster by the time Breiner knew or should have known of the drug connection between Foster and Penitani. Penitani gives this court no evidence that, at the time Breiner was representing both clients, there was a significant risk that his representation of either would be materially limited by his representation of the other.

> **2. Penitani Does Not Establish a Right to Relief Based on Breiner's Alleged Violation of Rule 1.9(a) of the Hawaii Rules of Professional Conduct, Governing Successive Representation.**

After Breiner withdrew as Foster's counsel in August 2013, Breiner continued to represent Penitani. On October 1, 2013, Breiner and the Government learned that Penitani had been supplying drugs to Foster. A Superseding Indictment was filed in Foster's case in May 2014. Eventually, Penitani testified against Foster at his two trials, with Breiner representing Penitani. Whether Breiner had a conflict of interest arising from these facts is governed by Rule 1.9(a) of the Hawaii Rules of Professional Conduct, which states:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to

24

the interests of the former client unless the
former client consents after consultation,
and confirms in writing.

Haw. R. Prof. Conduct 1.9.

Comment 9 to Rule 1.9 states:

The provisions of this Rule are for the
protection of former clients and can be
waived if the former client gives consent
after consultation, the consent to be
confirmed in writing under paragraphs (a) and
(b).  See Rule 1.0(c) of these Rules
(defining consultation).  A waiver is
effective only if there is disclosure of the
circumstances, including the lawyer's
intended role on behalf of the new client.

Haw. R. Prof. Conduct 1.9, cmt. 9.

Penitani says "it is impossible to see how Mr. Breiner
could be a zealous advocate for Mr. Penitani while maintaining
the confidences obtained in his representation of Mr. Foster."
*See* ECF No. 255, PageID #s 1608-09.  No evidence was presented to
this court indicating that Breiner did anything but zealously
represent Penitani, and Penitani does not even hint at any
confidence Breiner obtained in representing Foster that somehow
affected Penitani.

It is important to note that Rule 1.9(a) clearly speaks
to protecting the former client.  If the consecutive
representation violated Rule 1.9(a), that violation hurt Foster,
not Penitani, who testified against Foster in both of Foster's

25

trials.  Whether Breiner violated Rule 1.9(a) with respect to

Foster is not a matter before this court on the present motions.

What is clear is Rule 1.9(a) does not support Penitani's claim

for relief.

> ### 3. Even Assuming Breiner Had a Conflict of Interest Under the Hawaii Rules of Professional Conduct, Penitani Fails to Demonstrate That Breiner Had an "Actual Conflict" For Purposes of the Ineffective Assistance of Counsel Analysis.

As discussed above, it is not enough that Penitani

demonstrate that his counsel had a conflict of interest for

purposes of his ineffective assistance of counsel claim.

Instead, even assuming that Breiner violated the Hawaii Rules of

Professional Conduct, Penitani must show that the conflict of

interest adversely affected Breiner's performance with respect to

Penitani.  *Mickens,* 552 U.S. at 172 n.5; *Sullivan*, 446 U.S. at

349–50; *Hovey*, 458 F.3d at 908.  As the Ninth Circuit recently

stated in *Walter-Eze*, 869 F.3d at 901, a defendant must show "a

conflict that affected counsel's performance--as opposed to a

mere theoretical division of loyalties."  *Walter-Eze*, 869 F.3d at

901 (quotation marks and citation omitted).

Penitani only shows a theoretical division of

loyalties.  He does not show or even argue in his post-hearing

briefs "'that some plausible alternative defense strategy or

tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *Id.* (quoting *United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005)). Nor does he show the likelihood of "some effect" on Breiner's handling of particular aspects going to Penitani's conviction or sentence. *Id.* at 901.

Instead, citing *Miskinis*, 966 F.2d at 1268, Penitani asks the court to presume that Breiner's conflict adversely affected his representation. But even *Miskinis* stated, "To establish that a conflict of interest adversely affected counsel's performance, the defendant need only show that some effect on counsel's handling of particular aspects of the trial was likely." *Id.* (quotation marks and citation omitted). Penitani has made no showing that Breiner's handling of anything was likely affected by his alleged conflict.

At best, Penitani earlier argued that Breiner did not file objections to his presentence investigation report. *See* ECF No. 194, PageID # 997. However, Penitani himself told the court during his sentencing hearing that he had no objections to the presentence investigation report. *See* Crim. No. 13-00514 SOM, ECF No. 187, PageID #s 936. In his memorandum of July 7, 2017,

Penitani also contended that Breiner failed to challenge the amount of drugs he was responsible for, the two-level increase for possession of a firearm, and a four-level increase for being a leader or organizer. But Penitani fails to describe why the drug amount attributed to him was incorrect, or why he should not have received the enhancements for possession of a firearm and for being a leader or organizer. In other words, it is not clear what bases Breiner should allegedly have advanced in aid of getting a more favorable guideline calculation.

Penitani is similarly unpersuasive in arguing that Breiner "refused to file any motions to address issues of contradictory statements by agents." *See* ECF No. 194, PageID # 997. Penitani provides no description of what motions Breiner should have filed. The court has no way of determining whether any such motion would have been colorable.

To the extent Penitani previously argued that Breiner failed to get certain agreements in writing or bargained away appellate rights, Penitani fails to show that either alleged failure was likely affected by the alleged conflict of interest. The claimed failure to get agreements in writing pertained to Penitani's earlier claim that he expected to be sentenced to less

than 10 years of imprisonment.  Nothing in the record suggests that Breiner could have gotten such a written agreement.

In fact, there is considerable dispute about whether such an agreement existed at all.  *See* Transcript of Proceedings (Nov. 28, 2017) at 99, 148 ECF No. 305, PageID #s 2022, 2071; Transcript of Proceedings (Nov. 29, 2017) at 83, ECF No. 306, PageID # 2174.  Penitani was not credible in testifying that AUSA Thomas guaranteed a sentence of less than ten years.  *See*, *e.g.*, Transcript of Proceeding (Dec. 1, 2017) at 26-27, ECF No. 307, PageID #s 2247-48.

First, the purported "guarantee" came in the form of AUSA Thomas's alleged "kind of" nodding of his head in response to Penitani's description of what Breiner had allegedly told him. It is not clear to this court what the alleged "kind of" nod signified.  *Id.* at 26, PageID # 2247 (Penitani testified, "So before I even debriefed, when I sat down with Chris Thomas, I asked him, I said, Hey, I was told by Myles that you were saying that I'm guaranteed less than ten years if I admit to these things on this paper.  And he sits back, he kind of nods.  And I look at Myles and I said, Myles, is that how it works?  He goes, Yeah.  It's good.  I said, Okay.").

Second, a guarantee would have been a departure from Department of Justice protocol, made particularly unlikely by its alleged occurrence during a meeting at which the AUSA was observed not only by Penitani, but also by FBI agents and defense counsel.

Third, the testimony by Breiner, AUSA Thomas, the agents, and defense counsel was that AUSA Thomas had not promised to recommend a sentence of less than ten years. *See*, *e.g.*, Transcript of Proceedings (Nov. 29, 2017) at 79, ECF No. 306, PageID # 2170 (Breiner testifies that AUSA Thomas did not commit to any particular sentence); at 103, ECF No. 306, PageID # 2194 (AUSA Thomas testifies that no particular sentence was conveyed to Penitani); Transcript of Proceedings (Nov. 28, 2017) at 22, ECF No. 305, PageID # 1945 (Special Agent Sze testifies that Penitani wanted to talk numbers but couldn't be given "that kind of proposition"); at 45, PageID # 1968 (Special Agent Carney testifies that AUSA Thomas never promised a particular sentence); and at 148, PageID # 2071 (Nakamura testifies that AUSA Thomas did not promise that Penitani would get less than ten years).

Fourth, it is by no means clear that this purported "guarantee" had anything to do with any conflict of interest.

As noted earlier in this order, Penitani's counsel has
not been consistent on the issue of whether AUSA Thomas provided
a guarantee.  Nakamura explained that she wrote the
reconsideration motion that stated Penitani's belief that he
would be sentenced to less than ten years, but tha counsel had no
factual basis supporting Penitani's belief.  *Id.* at 149-50,
PageID # 2072-73.  Critical here is whether there was any
connection between Breiner's repesentation of Foster and either
this alleged guarantee or the failure to get it in writing.  Even
Penitani testified that such agreements are not put in writing
because their existence would make Penitani look bad when he was
testifying against other people.  *Id.* at 27, PageID # 2248.  In
short, Penitani does not show that any conflict of interest
likely adversely affected Breiner's actions with respect to any
alleged guarantee or the lack of a written agreement.

Without evidence tending to show that Breiner's conduct
was likely affected by the alleged conflict of interest, Penitani
fails to show the requisite adverse effect on Breiner's advocacy.
Without such a showing, Penitani's ineffective assistance of
counsel claim based on Breiner's alleged conflicts of interest
fails.  For the same reasons, Penitani's claim that he is

entitled to relief because the AUSA failed to tell this court about the conflict of interest also fails.

**V.         ORDER GRANTING CERTIFICATE OF APPEALABILITY.**

Because reasonable jurists might find the court's assessment of the merits of Penitani's claims debatable or wrong, the court grants Penitani a certificate of appealability with respect to his § 2255 motions.  <u>See</u> 28 U.S.C. § 2253(c)(2) (stating that a court shall issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right"); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

**V.         CONCLUSION.**

For the reasons set forth above, the court denies Penitani's Motions to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody under 28 U.S.C. § 2255.  The court,

however, grants Penitani a certificate of appealability.  The
Clerk of Court is directed to enter judgment against Penitani and
to close these § 2255 actions.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 13, 2018.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States of America v. Penitani*, Cr. No. 13-00514 SOM (03); Cr. No. 13-00653 SOM
(01); Civ. No. 16-00443 SOM/KJM; Civ. No. 16-00444 SOM/KJM; ORDER DENYING MOTION TO
VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY UNDER 28
U.S.C. § 2255; ORDER GRANTING CERTIFICATE OF APPEALABILITY